21-59-14 United States of America v. John W. Lawson. Oral argument, 15 minutes per side. Mr. Lawson for the defendant. Good morning, your honors. May it please the court, opposing counsel. My name is Phillip Lawson. I'm the appointed attorney for the case involves a criminal case involving two general issues. Involving a traffic stop as well as a search of a single family home. The three main issues before this court that I laid out in my briefing was whether the traffic stop itself was supported by reasonable suspicion which in this case was based upon an insurance database report. Was there a sufficient nexus between the conduct alleged in the search warrant supporting the search of 442 Hayes 4 claim? So the contents of those allegations, was there a sufficient nexus to search the property? And if not, was there a minimally sufficient nexus present to apply the good faith exception? Our argument is that the answer is no to all three of those. Therefore the district court must be reversed and with orders to suppress the evidence obtained from the traffic stop as well as the search of 442 Hayes 4 claim. If you look at my brief in regards to the reasonable suspicion issue regarding the traffic stop, there was a lot of cases regarding this database. Various databases whether it be NCIC, registration, insurance, etc. In this case the officer that was involved stated solely on the record that the basis of the traffic stop had to do with an AVIS which stated that it showed up verify insurance. That was the result of the database. When you look at the cases though in regards to whether a database readout is sufficiently reliable to provide reasonable suspicion in these scenarios, the cases look at two different things primarily. One is the database reliability. There are two cases that I cite that touch on this issue. One is the Willoughby 1 case which is a Kentucky Court of Appeals case and the other one is a Rios case out of the 10th Circuit that was done by current Justice Neil Gorsuch. In the Willoughby case in Kentucky that was actually an AVIS insurance case. In that case the Kentucky Court of Appeals reversed and remanded that case back to the trial court for an additional hearing. The basis of it was basically that they did not have enough evidence to prove that the database was credible enough to provide reasonable suspicion. In that case the police officer made some testimony. The county clerk testified that there were many lawful reasons that the AVIS database would show up verify insurance. And again the officer talked about the database but it was mostly on his side of it, not how the records were inputted into the database, how they were maintained, etc. As a result the Kentucky Court of Appeals sent it back. In terms of the Rios case, Justice Gorsuch issues, he reversed and remanded, based upon the opinion of that panel, on the same issue. That based upon the facts in the record, that there was insufficient evidence in the record to show that that database, which I believe had to do with registration, that there was not enough there to provide credibility. Didn't the officer here, Officer Salyer, he testified at the suppression hearing as I recall? Correct, he was the only witness. Didn't he testify that he had familiarity with the database, that he had used AVIS maybe a thousand times, perhaps a hundred times when it came to these insurance verifications, had sort of a general working knowledge of how it operated? Sure. Why is that not enough to provide reasonable suspicion? My apologies sir. I think that, and that's the reason I talked about Willoughby and Rios first hand, is because his testimony was more of how does it work on his end, in terms of punching it in, getting a result from the database itself within the vehicle. So does that go more toward familiarity? Correct, not reliability. So those are actually two different issues, which if you recall Your Honor, that Mr. Lawson, who had other counsel at the district court level, they conceded that he was familiar with the database, but we reserved on the issue of the database his reliability. And so what kind of evidence of reliability would you have wanted? That is, would you have required testimony from some higher up in the police system? Well, Your Honor, I think Willoughby provides a great example of that. They actually called a county clerk to testify in that case, talking about how the information from the county clerk, the documentation regarding insurance, when you get your registration tags and etc., and sends it to the transportation cabinet, which actually maintains the database. Now in Willoughby, they did not have a transportation cabinet person testify, only a county clerk. But the county clerk in that case testified that there were many lawful reasons. Okay, but here did not the officer in his own testimony say, yes, sometimes when it gives this verified, there have been cases where their insurance is legit, but most of the time it isn't. He gives this 75% figure. Correct. And so isn't that some testimony as to reliability? No, Your Honor, because again, he was a three-year officer with no direct experience on the back end of the AVIS database. But he had a large number. A hundred stops is a pretty decent number to at least put the issue in play. Now I guess it partly goes to Burton. That is, you presumably could have tried to call some higher up. It wasn't you, but your counsel below. Are you saying that in every case with AVIS, you need to get some kind of higher up? Would you accept an affidavit or would you have to have live testimony? Your Honor, I'll say this. Based upon this record, the issue is database reliability. And on this record, the officer clearly did not have any experience or knowledge regarding the database on how the records were maintained, how they were entered, how they got from A to Z. But he did have, at least if you accept his testimony, you did have the result, which is to say, yes, there are significant numbers, 25%, that's a pretty big number, where the person did have the insurance. Not because of any evil by anybody, but just because of the way the system operated. On the other hand, most of the time, 75%, when it said no insurance, that was the truth. So you might tell me that 75% is not good enough, that you want 85% or 99% or whatever, but it seems to me that that is evidence, isn't it? Your Honor, at the end of the day, from my reading of the law, looking at Willoughby, looking at Rios, this database has to be proved credible. And I don't think that an officer's personal experience in, yes, 100 times is a fair number, but extrapolate that over every officer in the state of Kentucky, who knows what would show up. That's like sampling. We know about polling and sampling, that if he seems to be an ordinary officer in an ordinary, medium-sized town, there's no reason to think that that's going to be radically different with a greater database, it seems to me. Just to say, we don't know, some other officer might fail 100% of the time, that seems implausible. Well, Your Honor, let me go back to Willoughby again. An officer in that case as well stated that more often than not, that the database showed up, but I'm starting to notice my time running out. Let me move on to the... Before you do it, there was some reference about the burden here. What we have in front of us is the denial of your motion to suppress, based on the traffic stop. Normally, the party that brings the motion has the burden of production and persuasion here, and you're saying the government did not prove that the database was credible. Isn't that the wrong way around, looking at it? Don't you have the burden to show that the stop was illegal, and therefore you have to show that the database was not credible? Is it your burden, since it's your motion to suppress? No, Your Honor. I think the Fourth Amendment says that any kind of warrantless stop or traffic stop puts the burden on the government to say, hey, this is a legitimate stop. Well, once they come forward with a prima facie exception, and here they say the exception here is reasonable suspicion based upon our database, then doesn't it shift you to rebut their prima facie basis? I don't think that the evidence of the record shows that they ever established even a prima facie, assuming that that's the burden, Your Honor. That even the database testimony from Officer Sawyer was sufficient to even establish that the database was credible. Again, go back to Willoughby, look at Rios. At the end of the day, there was no real testimony about how the database was maintained behind the scenes. You would require an evidentiary hearing in every case where they use a state insurance database to establish in every case that it's reliable? Is that the rule of law you would have us impose? What I would suggest, Your Honor, is I think the law is what it is, that the database has to be established as credible. So in every case? I think you could easily... That would be impractical. You have deputy sheriffs in little counties that, yes, I checked the Avis system and they said verify insurance, and he doesn't have all this information. You would require a full evidentiary hearing all the time. Your Honor, again, I keep going back to the law, but what's acceptable in terms of evidence in a suppression hearing? I think affidavits would work, potentially. However, I'd probably want some cross-examination on that. Is this all practical? I mean, all the officer needs is reasonable suspicion, which is a very low threshold, and it's an objective standard. And I just... I don't know if all that is required to satisfy the low standard of reasonable suspicion. Reasonable suspicion doesn't mean they have to prove everything. It means that they had a reasoned suspicion. Sure. And I think that has to be specific and it has to be reasonable. But if the basis of the stop is a response out of a database, it's only reasonable if the database is credible. And in this case, the record does not show that it was credible. Well, if an objective, reasonable officer would view it as credible, I think that satisfies the Fourth Amendment, doesn't it? I disagree. I would say that at the end of the day, and this is what Gorsuch talked about in Rios, is we're looking at the record. We know nothing about what this database is about. Whether it's totally credible or whether the officer objectively and reasonably thought it was credible, I think it's more of whether an objective, reasonable officer would have deemed it credible as opposed to whether it, in fact, was credible. I mean, in Rios, isn't that the basis that the officer was, as I understood it, correct me if I'm wrong, was told that, well, these temporary tags usually don't show up in the system. That was dispatch, yes. Yeah, so he was, in that case, it wasn't that he was relying on what had worked most of the time in the past, like Officer Salyer. He was told that this wasn't reliable in this case because it was a temporary tag. Yes, Your Honor. In that case, in the Rios case, the database came back no return. And the dispatch said, well, Colorado doesn't normally return on it. But he had told the dispatcher it was a temporary tag. That is correct. That is correct. But again, in even a clear situation like that, Gorsuch said, we just don't know anything about this database on this record. We don't know anything about Avis. That's really the issue primarily there. Why don't you take about a minute? I know you'd like to talk about the warrants involving the house. Maybe I can do that on the rebuttal. That'd be fine. Let me close. I know Your Honors are very interested in this database case. Let me just raise one other issue and then maybe I'll catch on the back end the search warrant. There were three responses that the officer testified to. These cases that we look at also look at the response of the database to provide reasonable suspicion. In this case, it has three responses. Yes, verify insurance. And then a third, it says verify insurance. Plate canceled for failure to maintain insurance. I talk about this in the brief and I'll wrap up real quickly just saying the verify insurance in light of that third option creates ambiguity. It creates a lack of specificity. It creates a lack of reasonable suspicion. And I'll touch the warrant on the back side. Well, if I can have five minutes. That's fine. Thank you, Your Honor. Thank you, Mr. Lawson. Bradley? May it please the Court. Lauren Tanner Bradley for the United States. Your Honors, the majority of the courts that have addressed this affirm these stops based on officer testimony alone. Getting to your point about the burden, Judge Griffin, it is true that when there's generally a warrantless search that the government bears some kind of initial burden of justifying the seizure or the search. In this case, the government did that. Essentially, there's an Avis alert that that, based on Officer Salyer's training and experience, indicates that this is an uninsured vehicle on the road and so he performs the stop. At that point, it becomes the defendant's burden to negate that reasonable inference that more often times than not, that means this motorist is uninsured. And so that becomes the defendant's burden then to negate that reasonable inference. And you see that in a number of these cases. And there's several. It's 10th Circuit, 8th Circuit, 7th Circuit, 5th Circuit have all basically turned on reliability but have said that there's essentially a presumption of correctness on these databases and that it has been the defendant's burden to show that that's unreasonable in this case. We're talking a lot about Escobar-Rios case. Now that case, it's just like we were all talking about a moment ago, there was actual evidence that the database with respect to Colorado Temporary Tags is not reliable. And that is why that case was remanded to then make a determination about whether or not the database was reliable in that sense. Now, the Willoughby 1, Willoughby 2 case is also interesting in that respect. Willoughby 1, we've talked a lot about what we didn't know about the database. But in that case, we had an officer who testified that more often times than not, the database was reliable. And then the trial court made a finding, the only reliability finding the trial court made was that the officer testified that it was 95% reliable. That was unsupported by the record. And so the court had to remand that case for additional fact findings. And then from Willoughby 2, we know that there are not statistics available for the exact accuracy of this database. The statewide statistics are just not available. And so, you know, reasonable suspicion doesn't require... So what ended up, that is counsel, you call Willoughby 1, Willoughby 2 in the briefing, they cite Willoughby 2014 case. In your brief at page 13, the only cite of Willoughby you just have is part of a string cite in 2017, which doesn't really say what that case held. So after the remand, then what happened? Because you don't describe that in the brief. And I apologize for that, Your Honor. Essentially, Willoughby 1 is the 2014 case that I described the difficulty of what the trial court had said for findings. Willoughby 2 is what returns on remand after additional fact findings were made by the trial court. And what happened was the county clerk had come in and testified that, you know, provided various facts that the database at any point might return 20,000 motorists as being uninsured. There's additional fact findings. And then Willoughby 2 ultimately upheld reasonable suspicion. So found that the facts in that case where an officer testified that more often times than not, the database is accurate and reliable, was sufficient. And actually Willoughby 2 even... Was it that the officer's testimony was sufficient or that the other person who testified who was what, a clerk? A county clerk. And actually Willoughby 2, the court actually said that the court has consistently held that a law enforcement officer's testimony alone is enough to constitute substantial evidence. So they did not affirm solely based on the officer's testimony, but they said it would have been sufficient. You cite it as if familiarity and reliability are established. That is the officer's testimony needs to show both. I mean, it's your topic sentence at page 13, right? I apologize. I'm not the briefing attorney on this case. Anyway, it says Kentucky law endorses Avis as a reasonable suspicion, at least when familiarity and reliability are established. And then Willoughby, what you call Willoughby 2, is part of your string site in support of that. Yes, and so that is true that Kentucky courts have upheld this specific database as being sufficiently accurate and reliable to justify a traffic stop. And that was the finding of the Willoughby 2 court and then also the Lynham court in Kentucky. And I think that's actually an interesting point too, about this is a Kentucky officer conducting a traffic stop in Kentucky, and other Kentucky courts have said that this specific database he's relying on is sufficiently accurate and reliable. So as you're thinking there for a moment, I just want to put a fine point on the last set of questions. So it's your sense that in addition to, I guess Willoughby 1 and 2, that the majority of the cases come down with the position that it's sufficient for the officer to testify as to familiarity and as to reliability in terms of showing sufficient basis for reasonable suspicion to stop a vehicle based upon lack of, a question about insurance verification and things of that nature. That you don't ordinarily have to bring in database experts or somebody who maintains a database, IT person, or people like that. If the officer's got familiarity, has worked with the system, has a sense of its reliability over time, that's been sufficient for most courts. Yes, absolutely your honor. That has been sufficient for the 10th circuit, the 8th circuit, the 7th circuit, and the 5th circuit. The 5th is the Broca. That's the Broca case. You also have Cortez and Esquivel from the 10th circuit. Miranda is the case from the 7th circuit. And that's actually where the court is also applying a presumption of correctness on the database. And so what these cases are typically saying is once the government has established some form of reliability and for reasonable suspicion, this is a low bar, that then it is the defendant's job to negate that inference. In all those cases, the defendant was not able to negate the inference. In Esquivel-Rios, the defendant was able to negate the inference because there was some testimony that the database was not in fact reliable. So the 10th and the 7th circuits apply this rebuttable presumption or something of that nature, but that's not what you're arguing for today. You think it's sufficient in terms of reasonable suspicion if an officer testifies as to reliability and familiarity as Officer Salyuk did today for this case. Yes. And so with respect to the familiarity and the reliability, that's something that kind of comes in from the 5th circuit Broca case where they divide this analysis into these two prongs. I think in order to establish reliability, you have to be able to say that you have found the database reliable in your experience. You must be familiar with the database to some extent. That can be based on an officer's training and experience. And that was certainly established here where the officer said out of 100 traffic stops, approximately 25 of those, an individual was actually able to show proof of insurance. And I will also point out that Kansas v. Glover, that's the 2020 opinion from the Supreme Court, that that case actually says that reasonable suspicion falls considerably short of a 51% accuracy rate. And even Escobar-Rios says that a 40% accuracy rate would very likely have been enough. So what we have here is more than sufficient to establish reasonable suspicion that this individual was committing a traffic violation. Here we actually have the officer's testimony that it does establish familiarity and reliability. But are we going to require in cases going forward that every case that the officer, that the state present that sort of evidentiary record? Or from this point on, can we establish a rebuttable presumption of the reliability of this particular database? What do we do for future cases? I think for future cases, we can establish rebuttable presumption. And I think you see that in the Miranda-Solongo case, that's the Seventh Circuit case, where they actually say that there's a presumption of correctness with respect to these databases, that these are like government records that are typically held, that we can presume reliability unless otherwise shown to be unreliable. By the defendant, who has the burden to rebut the inference of reliability. Yes. In the same way that the defendant would typically have to negate the inferences that are being made by officers. If there are no further questions, I will rest on the briefs. Thank you, your honors. Just a brief comment on the government's statement there regarding the database. There was some discussion about other cases that have addressed this issue. I just want to state here, looking at my notes here after reviewing the cases, if you look at the Cortez-Galvez case, another Gorsuch case out of the Tenth Circuit, reliability wasn't even addressed. It was waived. If you look at the Hannel case out of the Eighth Circuit, reliability was also waived. They were just dealing with the issue of the response. I'm sorry, when you say the issue of response, what did you mean? So in this case, we talked about how we need to establish the database's reliability, and then we talked about how the response of the database, whether that's reasonable suspicion. The issue of database reliability, meaning can we establish the database's reliability or not, that was not even addressed in those cases. If you look at the Broca-Martinez case, the officer that testified in that case regarding the reliability was far better, far more information and testimony regarding the database's reliability. So that's the distinction. In the Willoughby case, your adversaries indicated there were two Willoughby cases. Correct. How does the second case affect your argument? I think at the end of the day, Your Honor, we go by what's in the record. And in the record on Willoughby 1 was insufficient. And Willoughby 2, they brought out a lot more witnesses to testify regarding the database reliability. Now ultimately, yes, they did find that the database was reliable in that case. But again, they were going on the record in each individual case. So you're saying here that maybe they could have proved it was reliable, but they didn't. Correct. And it was their burden to show reliability. Correct. Moving on to the search warrant here, Your Honors, I know that I'm running low on time. So let me just say this. I discussed a case, I believe, out of Memphis. It was the Brown decision regarding, I guess, I'll try to do an analogy here on whether a sufficient nexus was present to search 4442 Hayes Ft. Lane in this case. I believe those are very similar in facts that really in Brown, the only thing connecting the allegations to the specific residence or single family home was the fact that the defendant in that case gave that address at arrest. In this case, same scenario, except in this case the address was on a utility bill. And so I believe that there's parallels there and believe that based upon the Brown... Don't we have a confidential informant here too? Oh goodness, Your Honor. Yes, I notice I'm running low on time. I'd love to tell you about that. We do. Your Honor, on the confidential informant, there was actually two sets of allegations in the warrant. There was what I call innuendo from the law enforcement officers... All right, I'm not sure it's proper rebuttal since the U.S. can't rebut it or can't respond at this point. But okay, we understand your point, I think. Okay. Yeah, your time has expired. Appreciate your argument. Thank you, counsel, for your time. The case will be submitted. We would like to thank you, Mr. Lawson, for taking this case under the criminal justice act. It's my pleasure, Your Honor. That's a real benefit to your client and to the system at large. It's my pleasure and honor. You would like to... Thank you. And I will just assume that the government doesn't... Argument raised and rebuttal of that last minute. You can submit a letter to us. It was very brief. Ordinarily, you would have addressed it and responded to his argument in chief and I know that didn't happen here. But anyway... But all right. Thank you, Your Honor. Okay, great. Thank you. Case will be submitted. You may call the next case.